Council, the next case this morning is 20-2022, Rio Grande Foundation v. City of Santa Fe, New Mexico. Council, please prepare to argue. Thank you. Your Honor, thank you. May it please the Court, my name is Tim Sandifer, appearing on behalf of the Rio Grande Foundation. On page 28 of the City's answer brief, they say, Any donor who does not want to appear in disclosure reports can choose not to contribute to ballot measure advocacy. I think that's a really interesting quotation because it really crystallizes what this case is about. If people want to exercise their First Amendment rights to speak on a political issue, they sacrifice their confidentiality. And if they don't want their names, their employer's identities, or other personal information put on a publicly accessible government list, they have to choose not to contribute to that political campaign. And the question before the Court is, is it constitutional to force people to make that choice? This ordinance says any time the organization spends $250 on an issue campaign, it has to give the government personal identifying information about anybody who contributed any money for that purpose, even just $10, $20, $5, even just a penny. And the test here is exacting scrutiny. And that means that there must be a sufficiently important government interest. The relationship between the burden imposed on speech and that interest must be a substantial one. And the City has to show that it can't serve that interest by any significantly less broad means. Let me interrupt. So you would agree that it's a balancing test, right? Yes, Your Honor. It's a comparison. So even if we were to accept your argument that it's a minimal interest rather than a substantial interest that's found by the District Court, we would still need evidence of burden. And as I read the District Court, what it said is that you didn't provide any evidence whatsoever because you didn't provide any affidavit to any information, any evidence about members of the foundation who had been burdened by this, that what you did was you tried to rely on affidavits and testimony from people in other organizations. I think the District Court has a good point there. And so I'm very interested in what your response is, which I'm sure you're going to talk about Buckley. So let's let's take that on. Yes, Your Honor. Well, so Buckley does say that in a challenge like this, a plaintiff can demonstrate this risk of retaliation, intimidation or threats by testimony or other evidence relating to people with similar views. But that's not what Buckley says. You quote Buckley and you leave out the introduction that says new parties that have no history upon which to draw may be able, may be able to offer evidence of reprisals or threats directed against individuals or organizations holding similar views. You're not a new party that has no history upon which to draw. Your organization's been around for 20 years and has been involved in a lot of initiative actions. So I'm struggling with whether there's anything to balance against whatever the interest of the state is. I think there's two answers to that, Your Honor. The first one is it's undisputed that the foundation has never been required to provide this information prior to the enforcement. That's that was an issue in the record. So until 2017, the foundation was never required to give out that information. And so in that sense, they are a new party in that they are they are newly required to provide this information. And secondly, I think that Buckley, we have to understand that that Buckley makes clear that the reason why. And not just Buckley, but other chill cases make clear that the reason why you can't require a plaintiff to show that they are personally harmed or retaliated against or intimidated or threatened is because it's impossible to prove today that you won't suffer retaliation tomorrow or a month from now or years from now. And that's why the test in a chilling case has always been an objective case. It's never been a subjective test. It's a test that determines whether a person of ordinary firmness would hesitate to speak out under these circumstances. And that can be proven by showing that similarly situated organizations and their supporters have been subjected to retaliation and so forth. Requiring the foundation itself to prove that it itself has been subject to threats or harassment or intimidation is is a legally improper burden. And it's too high. And remember also that when we're talking about chilling effects, not only can you not prove today that your supporters won't be harassed next month or retaliated against next month, but it's also possible that the retaliation of harassment in the future might be over a different issue. The organization might place this information on a publicly accessible list today and then five years from now take a position that's a controversial political position that nobody had ever thought of five years before. And let me interrupt. All of these are interesting arguments and there. I don't remember reading any of these in your brief. I don't remember anywhere in your brief briefs where you argued that we are essentially a new party as recognized in Buckley because of the changes that you've just mentioned. And well, I think you're right. I'm sorry. I think we get into this issue when we talk about whether the district court imposed the improper evidentiary burden on the plaintiffs by forcing us to prove that we ourselves have been harmed. And your honor's question was, why does Buckley cover that? And the answer to that is that there are several legal reasons as well as policy reasons why courts do not require that kind of evidence when talking about a chill burden. And we do talk about this, I know, in the supplemental brief on standing as well. So I do think it is proper for us to make the showing that this is a significant burden by showing that other similar organizations have suffered this kind of harassment. And also remember, it's not a particularly difficult burden for us to show that they're a person of ordinary firmness would hesitate to contribute to or speak out on an issue, knowing that this information is going to get out there. But our focus in this case is really primarily about interest and not about the burden, although, you know, obviously need both. I mean, if even if the interest is a feather, you have to have something to put on the other side of the scale. Yes, that's right. Your honor. And if the district court is correct and you cannot rely on information based on what's happened to other organizations, then there's nothing to put on the other side of the scale. Well, I think your honor, it's undisputed that this does impose at least some burden. I mean, there is a nonzero burden in having to prepare these reports, submit them and subject oneself to this kind of publicity. And if the interest is is sufficiently lightweight, then even such a small burden would still be excessive. And our view is that the that the interest here is just that lightweight. The Samson case really provides us the best guide in that. And what Samson says, your honor, asked earlier about a balancing test. Samson says we're talking about a spectrum here. On one hand, you've got the kind of rule that says the major sponsor of an initiative has to put that information out there. And that's a strong informational interest. On the other end of that spectrum, the court says there's minimal interest, such as in Samson. Now, in Samson, remember, the thresholds were two hundred and fifty dollars spending. You have to report anybody who's contributed twenty dollars. And here it's relatively the same. It's two hundred and fifty dollars spending and zero dollars and one cent contribution. And what is the interest according to the Samson analysis? Samson points out Supreme Court's never endorsed the informational interest at all in issue campaigns to be. You run a real risk of an ad hominem problem where the voters focus only on who funds you instead of on the merits of the initiative. And third, the court says that the informational interest varies with the dollar amount, because when you get down to that side of the spectrum, you're not even talking about sponsors. You're just talking about supporters and the public doesn't really have an interest in knowing. So, counsel, let me just interject you. You mentioned your standing brief a few minutes ago. I need to get some clarification on. It seems as if your brief is saying that the alleged injury is that the ordinance chills Rio Grande's associational rights with its donors. Is that is that what your alleged injury is? Yes, your honor. It's the it's the burden of threats, retaliation and intimidation both against the foundation and its donors. And that incidentally is what differentiates. But it's an injury. It's an injury to the organization. Correct. Not an injury to your you're not you're not arguing on behalf of your donors. I believe we're making both arguments. Your honor. We're contending that our that our donors want to contribute to us in knowing that their information will be kept confidential and that we will inflict injury on them when we're compelled to disclose that. What what is your what is your allegation or what is your evidence that Rio Grande intends to work again on a on a Santa Fe ballot measure? I mean, you're you're only asking for prospective relief. You're not asking for anything that happened in damages for anything that happened in 2017. So I'm going to go off video for one second here, but I'm listening in. So don't worry. OK. You know, where's you know, where's where's your injury? Where's your standing injury? In fact, that supports your claim for prospective relief. I think your honor that it's first it's undisputed between the parties and also that the district court found that the foundation has been around for 20 years is well known as participating in these kinds of public debates that it will speak out when incidents arise where there's an initiative or something that touches on its interest. And those interests were all found to be sufficient to get standing in the Walker. Well, you know, I'm the parties can agree to standing, but it is an independent inquiry that we have to take seriously. And I'm just not seeing where you've established that any kind of imminent risk is out there that the ordinance is going to be enforced against you again. Where is that in the record or in the or in the allegations? Your honor, the district court itself found that the foundation not only has participated, but does continue to participate in these kinds of political disputes. And it's really there's no question that the foundation is subject to this ordinance. It has been subjected to it in the past. And that's really all that's required to bring a case for prospective relief is to show a likelihood that you will be subjected to this require the objectionable statute that you're challenging in the Walker case. For example, the court found that the Institute for initiatives and referendums have standing to challenge requirements that apply to initiatives and referendums without necessarily knowing any particular campaign that it intended to participate in. I did want to say a word about the city's facial versus as applied argument. They seem to be of the view that we can only as applied challenge to this ordinance instead of a facial challenge. And that's I think that's a little confusing because that that relies on a misunderstanding of what Citizens United said. Citizens United, remember, was a candidate speech case. And in that case, the court said that these kinds of disclosure requirements are are constitutional in that context. And consequently, that left parties with only as applied challenges in the future. But this is an issue campaign context. And so that language doesn't really apply here. And I would direct the court to the Supreme Court of New Mexico case that we cite in our supplemental reply brief on standing the United States versus Supreme Court of New Mexico, where there's a very helpful discussion of facial versus as applied. And the court makes clear that, of course, you can bring an as applied challenge to, I mean, a facial challenge to a law that applies even to just a narrowly defined group such as attorneys. And finally, I wanted to say before my time, I want to take a little bit for rebuttal. So I did want to say with regard to chill. Remember, we're not talking about subjective chill here. There is an objective chill, which is that the foundation, and this is in the record, the foundation spent $1,500 on postcards to distribute to voters, urging them to vote no on the soda tax, which it chose not to send out but to discard as a consequence of the enforcement of this ordinance. So if the court is concerned that we're sounding like a, I think the city calls it a theoretical possibility of chill, this case has as objective a chill as the court could ask for. I'd like to reserve the remaining time for rebuttal if there are no questions. Reserved. Next. Good morning. And may it please the court. I am Tara Malloy, I am representing a Pelly city of Santa Fe, and the city's ethics and campaign review board. I think we, of course, take a completely counter position to RGF. And the basic argument is that the district court properly applied exacting scrutiny to this case. It followed exactly what this circuit's presence direct. First, the district court noted the important governmental interest supporting Santa Fe's disclosure law, the important city informational interest, it weighed its strength, and then it balanced this interest against the actual burdens alleged by the plaintiff here, RGF, and found that the interest outweighed the burdens. This is precisely the mode of analysis that the circuit has instructed the courts to engage in. And it also complies with Supreme Court precedent. Let me interrupt you there. In determining that it was a substantial interest, did the district court acknowledge that for a ballot initiative, we're only looking at one of the prongs of the justification for the interest? Absolutely, Your Honor. And in assessing that, what about the sliding scale approach? Did the district court consider all of the factors that we have suggested go into the assessment of how great the interest is? Yes, Your Honor, the district court did. The district court noted and discussed at length the circuit's precedence in Sampson and Williams, and noted that this circuit has found that the strength of the governmental interest does vary up and down with the amounts spent in terms of its analysis in those cases. However, the overarching point is that when arguing that the city has no strong or substantial governmental interest in the law here, RGF picks the wrong target. It is not looking at its own level of expenditures in city elections, which were at least $7,500, if not closer to $10,000. Instead, it targets only the disclosure threshold of the law. Of course, however, Sampson and Williams looked at specific expenditures of particular plaintiffs. It declined to rule on the facial validity of Colorado's issue committee political disclosure regime. Instead, it said that this law very well could be applied constitutionally to larger expenditures or more sophisticated groups, but this is not the case here, and we are going to look at specific expenditures in that case. Sampson and Coalition, this statute was different in some respects because there were very onerous registration requirements, and one of the considerations was that they were so onerous that the average person couldn't figure out how to comply with them without going out and hiring an attorney and an accountant to do all the work necessary. I mean, we don't have that here, do we? Absolutely not, and now we are looking at the burden side of the ledger, and as this panel has already indicated, there seems to be no evidence offered by RGF, and the district court found no evidence offered by RGF of the actual burdens on RGF because operation of 92.6. It did not show any donor loss. It did not even indicate that any donors had ever requested anonymity. It had no allegations of harassment suffered by its own donors, staff, or officers. The district court just found that there was nothing to substantiate its general allegation of possible donor chill. Council is arguing that we really are new. As Buckley says, you know, when you're talking about a new organization, you may be able to borrow information from other established organizations, and they're saying that this statute didn't apply to us until I think he said 2017, and therefore, for all intents and purposes, we're new, like a new organization. So, we're not new because we don't have operational history under this statute that we could rely upon. How do you respond to that? Well, certainly, this was not an argument that RGF has ever presented in the course of this litigation. That said, Buckley provided that only new parties can appropriately provide evidence of different groups, and it did not turn on whether the new party had operated under a legal regime or not. It was simply whether or not they could show some sort of experience with public hostility or some sort of experience of very closely affiliated groups of public hostility in order to substantiate their claim that there is a reasonable probability of harassment and reprisals if their donors' identities were disclosed. And I think the best answer to that comes from Citizens United, which also looked at that plaintiff's claim for Buckley's as-applied exemption for harassment. Citizens United, like RGF, was a fairly established advocacy group. They did not offer any evidence that their own donors or staff had at any point been showed. Instead, it only offered evidence of different groups and how their donors had been blacklisted, threatened, and otherwise targeted for retaliation. But the court found that this was insufficient. It noted exactly what the district court did here, that Citizens United had offered no evidence that its members may face similar threats of reprisals. And the best evidence of Citizens United's potential danger was its own long experience. Counsel, if I may change the topic just a touch. Do you read the complaint here as seeking only prospective relief? RGF has clarified at multiple points that it is only seeking prospective relief. Let's talk about standing. How can there possibly be standing? I know your view is that there isn't, but how can there be standing on the as-applied claim if the relief is only prospective? Well, right. That is exactly what the city tried to explain in its supplemental briefing. I would note that RGF's case seems to have evolved considerably throughout the course of this litigation. In the district court, the city understood, and the district court understood the plaintiffs to be bringing an overbreath challenge, which would allow it to step beyond the facts of its own case, step beyond its own activities to challenge a law on the basis of its potentially impermissible application to other plaintiffs. It has disavowed such a theory, and in fact somehow claims that the fact that the district court analyzed it according to this theory at all after applying substantial relation tests is somehow an error of law, which the city disputes. But given the evolution of this case and the fact that now it is simply claiming that it seeks a remedy as to its prospective activities, while providing no explanation of those prospective activities, it does seem that there is not sufficient injury to provide the factual basis for an as-applied ruling. The city pointed to case law from the Fifth Circuit and the Eleventh Circuit, where there are similar challenges brought by plaintiffs that claim that thresholds of disclosure laws were too low, and the city said, look, maybe even if you pass bare standing, you have alleged nothing specificity in terms of your future activities. How can we possibly craft an as-applied ruling with the particularity that that type of relief requires? You don't argue on the as-applied challenge that they're standing for that purpose? The district court and the city, by necessity, have analyzed the as-applied challenge on the basis of RGF's almost $10,000 of expenditures in the 2017 SOTA tax ballot measure election. That's the only point of reference that the city had. So that is what the district court analyzed. And it found that the law was constitutional as applied to that level of expenditure. And, of course, it was very unlike the situations of the plaintiffs in Sampson and Williams. But purely on the inquiry of standing for the facial challenge, you don't challenge that? Well, what we designate as RGF's broadest facial request, which is, as it alleged in the complaint, that the court should strike down 9-2.6 on its face with respect to all covered city ballot measure advocacy. Is that a standing issue? Well, insofar as that… I'm trying to ask about standing to challenge the facial validity as to whether there's an issue on that point from your perspective. The city did not contest RGF's standing in terms of the broad… Thank you. That's the question I was asking. And I appreciate all the rest of the information. Thank you. Just as a follow-up, counsel, on that. Do you agree that courts need to be more lenient on the standing issue when the alleged injury is First Amendment chill? I think that it's fair to say that courts are fairly lenient in terms of the standard for standing in First Amendment cases. And then again, as I was trying to clarify in response to the earlier line of questions, insofar as RGF is alleging that the statute is unconstitutional in all applications with respect to ballot measure advocacy. Well, it has alleged it's going to do ballot measure advocacy in the future. So presumably, if the statute is struck down in its integrity, it will not apply to RGF anymore. So in that bare sense, the city did not contest that it may have standing. But counsel, isn't there still a question of alleging injury or alleging imminent risk of injury, even on the facial claim? Well, I think that it's a fair point. And I guess officially, the city takes no position on RGF standing with respect to the broadest facial claim. Its own chosen standard under initiative and referendum required not only the plaintiff to allege a law had applied to it in the past, but that it would continue to engage in such activity, even if it wasn't particularly specific in terms of the factual allegations as to that activity. But what the prong that RGF seems not to have met is to suggest that the law is actually going to prevent it from speaking in the future. The one bit of evidence that RGF has offered is the affidavit of its president, Paul Gessig. And in that affidavit, the president states that RGF fully intends to participate in the future and does not appear to be dissuaded from participating in a future ballot measure election. Council, I'm looking at that affidavit and that's all it says. It doesn't say anything specific about the future other than that they will speak in the future. Correct, I think we're in heated agreement. The city did question in the supplemental briefing whether RGF had met that third prong of initiative and referendum, which is that it had not indicated that it was going to stop ballot measure advocacy and thus it did not seem to be chilled in terms of its activities, even in the most bare sense. Anything else? Nothing further, thank you. Thank you, Council. All right, Mr. Sander, I think you have some time left. Yes, a minute and 26 seconds here. Go ahead. Thank you, Your Honor. The city keeps trying to make this into an as-applied challenge when this is a facial challenge, and we could not have been clearer in our briefs that this is a facial challenge to this law. And as a result, this talk about as-applied exemptions under Citizens United is simply beside the point. All right, so just to come to closure on that then, this case really is about the facial challenge and not the as-applied. That's right, Your Honor, and we are not required to prove that we sought anonymity or anything like that. For one thing, the burden is on the city, not on us. On standing, on improving standing, the burden is on the city to prove your standing? No, Your Honor, the burden is on the city to demonstrate the constitutionality of this law, and that means that we are not required to show that we sought anonymity, which is what the city said during its argument. We are also not required to show that we ourselves have stopped speaking. The test for chill is whether a reasonable person would do so. Even a person who continues to speak in light of the risk of intimidation, threats, or backlash still can bring a chill speech in the appropriate case. So our standing is predicated on the fact, and you heard the city concede this fact, that we have spoken long in the past, we continue to do so, and will continue to do so, and will be subjected to this ordinance, and that is all the standing requires of us. Thank you, Counselman. We understand the case. It's submitted. Counsel are excused.